**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**WILLIAM A.,**

      **Plaintiff,**

**vs.**                                  **CIVIL ACTION NO. 2:22-CV-00447**

**KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

      This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered October 14, 2022 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is Plaintiff's Brief in Support of Complaint (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12).

      Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for remand (ECF No. 11), **GRANT** Defendant's request to affirm the final decision (ECF No. 12); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed his applications for disability insurance benefits and supplemental security income on October 2, 2019 alleging disability beginning September 5, 2019 because of peripheral neuropathy and chronic back and bilateral leg pain. (Tr. at 20, 252) His claims were initially denied on December 12, 2019 (Tr. at 54-61, 62-70) and again upon reconsideration on August 26, 2020 (Tr. at 73-88, 89-104). Thereafter, he filed a written request for a hearing on October 1, 2020 (Tr. at 144-145).

An administrative hearing was held on December 22, 2021 before the Honorable Sabrina M. Tilley, Administrative Law Judge ("ALJ"). (Tr. at 37-51) On February 18, 2022, the ALJ entered an unfavorable decision. (Tr. at 17-36) On March 22, 2022, Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 216-218) The ALJ's decision became the final decision of the Commissioner on August 18, 2022 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On August 30, 2022, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 9) Subsequently, the Plaintiff filed his Brief in Support of Complaint (ECF No. 11), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 12), and finally, the Plaintiff filed his Reply Brief reiterating his arguments in support of remand (ECF No. 13). Consequently, this matter is fully briefed and ready for resolution.[1]

---

[1] On March 1, 2023, the undersigned issued an Order directing the parties to further brief their respective arguments in light of the Fourth Circuit's recent decision in Shelley C. v. Commissioner of Social Security Administration, et al., No. 21-2042, 61 F.4th 341 (4th Cir. Feb. 22, 2023) holding that a claimant's subjective complaints were improperly disregarded because they are inconsistent with the objective medical evidence. (ECF No. 14) Pursuant to the Court's

## Plaintiff's Background

The Plaintiff was 51 years old as of the alleged onset date, defined as a "person closely approaching advanced age" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), 416.963(d). (Tr. at 30) He had a limited education, having completed the seventh grade, and last worked as an underground coal miner (Tr. at 253).

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1

---

Order, the Plaintiff filed his Supplemental Brief on March 29, 2023 (ECF No. 15), and the Commissioner filed hers on May 1, 2023 (ECF No. 16). The undersigned observes that the Shelley C. decision mirrored the Arakas decision, discussed further *infra*, to the extent that the Fourth Circuit found the ALJ improperly evaluated the claimant's subjective complaints, and failed to understand the unique nature of her chronic depression, as it also had features of "waxing and waning" that rendered this particular claimant disabled. See Shelley C., 61 F.4th at 368. Nevertheless, the Plaintiff herein focuses on the ALJ's review of his subjective complaints as they relate to his *physical* impairment, as opposed to the *mental* impairment discussed in Shelly C., which makes this case not quite pertinent to the matters at bar, however, it underscored the Circuit's long-standing jurisprudence that subjective complaints cannot be discounted simply because they are inconsistent with the objective medical evidence. (See ECF No. 15)

to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c). These Sections provide as follows:

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and

4

how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings

and conclusion reached in applying the technique must be documented at the ALJ and Appeals
Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written
> decision must incorporate the pertinent findings and conclusions based on the
> technique. The decision must show the significant history, including examination
> and laboratory findings, and the functional limitations that were considered in
> reaching a conclusion about the severity of the mental impairment(s). The decision
> must include a specific finding as to the degree of limitation in each of the
> functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ found the Plaintiff met the insured status requirements
through December 31, 2024. (Tr. at 22, Finding No. 1) Next, the ALJ determined that he also
satisfied the first inquiry because he had not engaged in substantial gainful activity since
September 5, 2019, the alleged onset date. (Id., Finding No. 2) Under the second inquiry, the ALJ
found that the Plaintiff suffered from the following severe impairments: multilevel degenerative
disc disease of lumbar spine with pain in lower extremities; migraines; depressive disorder; anxiety
disorder; somatic symptom disorder; borderline intellectual functioning; unspecified obsessive and
compulsive and related disorder; and mathematics and spelling problems. (Tr. at 22-23, Finding
No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination
thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P,
Appendix 1. (Tr. at 23, Finding No. 4) The ALJ then found that the Plaintiff had the residual
functional capacity ("RFC") to perform light work:

> The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently.
> He can sit six hours and stand and/or walk six hours in an eight-hour workday. The
> claimant can never climb ladders, ropes, or scaffolds, kneel, crouch, and crawl and
> occasionally climb ramps and stairs, balance, and stoop. He can tolerate occasional

exposure to extreme temperatures, vibration, and hazards. The claimant retains the capacity to understand, remember, and carry out simple routine repetitive tasks of 1-2 steps that requires no more than rudimentary reading, writing, and mathematics. The work should require no fast-production requirements and few if any work-related decisions.

(Tr. at 25, Finding No. 5)

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. (Tr. at 29, Finding No. 6) However, at step five, the ALJ found that based on his age, education, work experience and RFC, the Plaintiff is capable of performing other jobs in the national economy. (Tr. at 30, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability since September 5, 2019 through the date of the decision. (Tr. at 31, Finding No. 11)

## The Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff alleges that the ALJ erred in her analysis of his self-described physical limitations in accordance with the pertinent Regulations; the Plaintiff asserts this error is significant because his self-described limitations not only preclude him from performing light work on a sustained basis, but all work. (ECF No. 11 at 5-7) To that extent, the Plaintiff should be found disabled. (Id. at 7) Further, the Plaintiff argues that his self-described limitations are consistent with the evidence, and the ALJ did not reasonably find to the contrary, particularly with regard to her assessment of the other evidence of record: the ALJ's analysis of the Plaintiff's daily activities, location, duration, frequency and intensity of his pain as well as precipitating and aggravating factors, including medication and other treatment, and work history were based on a highly selective discussion of the record that is contrary to this Circuit's jurisprudence and legal standards. (Id. at 7-13) To correct these errors, the Plaintiff asks this Court to remand this case.

(Id. at 14)

In response, the Commissioner states that the ALJ appropriately evaluated the Plaintiff's subjective complaints in compliance with legal standards when assessing his RFC, including the Plaintiff's self-described limitations against the entire record, noting his conservative treatment and overall stable condition. (ECF No. 9-12)  The medical record showed that the Plaintiff had experienced significant improvement in his symptoms from treatment and medications, and that the side effects would not prevent him from working. (Id. at 13) The ALJ also discussed the Plaintiff's daily activities against the overall record and concluded that he functions fairly well; where there are conflicts in the evidence of record, those are for the ALJ to decide, not this Court, thus, the Plaintiff's argument that his own statements should be given greater weight fails under controlling law. (Id. at 14-15) While the ALJ did not explicitly mention the Plaintiff's work history as a factor in assessing his credibility, she clearly considered it, having determined his insured status and inability to perform his past relevant work; regardless, this particular factor is not dispositive on her overall assessment of the Plaintiff's limitations. (Id. at 15-16) There is no medical opinion confirming that the Plaintiff is as limited as he claims, and the ALJ's RFC assessment is also supported by the record. (Id. at 17) Further, the ALJ did not discount the Plaintiff's subjective complaints by relying only on the objective evidence, but evaluated them against the body of evidence, which included the medical record. (Id. at 17-18) Significantly, the ALJ expressly acknowledged SSR 19-4p when evaluating the Plaintiff's migraine impairment, which provides that consistency and supportability between reported symptoms and objective medical evidence are critical in assessing an RFC. (Id. at 18-19) The Commissioner argues the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 19)

In reply, the Plaintiff reasserts his initial arguments, but emphasizes that the ALJ's evaluation of his subjective symptoms falls below legal standards because his subjective complaints are not inconsistent with his daily activities or the evidence of record; the ALJ mischaracterized his activities by relying solely on the consultative examination report while ignoring other evidence, including his testimony and Function Reports. (ECF No. 13) To that extent, the ALJ failed to comply with this Circuit's recent jurisprudence governing same, as she essentially increased the Plaintiff's burden of proof by relying primarily on the objective evidence to discount his self-described limitations. (Id.)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

The Medical Evidence:[3]

In September 2019, the Plaintiff presented to Tomas Paredes, M.D., a general family medicine doctor, with complaints of low back and left leg pain lasting about two months (Tr. at 26, 492). The Plaintiff had normal muscle strength and tone, but sensation in his left thigh was abnormal and he exhibited tenderness of the lumbar spine (Id.). Dr. Paredes prescribed Gabapentin and referred him for x-rays and an electromyography ("EMG")/nerve conduction study (Tr. at 26, 493). The EMG of the Plaintiff's bilateral lower extremities showed no evidence of left lumbar radiculopathy, but it noted a small fiber neuropathy or an upper motor neuron process that could

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for the Plaintiff's physical impairments, with an emphasis on the Plaintiff's symptoms related thereto, including, but not limited to, his pain.

[3] The recitation of the medical evidence cited herein consists of the relevant treatment records and related medical opinion evidence discussed by the ALJ in her written decision. (Tr. at 23-24, 26-28, 29)

not be excluded based on the study (Tr. at 26, 343-345). Lumbar spine x-rays showed L5-S1 discogenic degenerative changes and facet arthropathy (Tr. at 26, 516).

October 2019 records from neurologist Victor Jaramillo, M.D., note the Plaintiff's complaints of low back pain and left leg weakness (Tr. at 26, 348). On examination, Dr. Jaramillo found that the Plaintiff had 4/5 strength in his left leg, but it was normal in the right; his reflexes were symmetrical bilaterally; and his gait was normal with no limping (Tr. at 26, 349-350). Dr. Jaramillo ordered an EMG and an MRI (Tr. at 26, 350).

In November 2019, the Plaintiff went to the emergency room with complaints of back and leg pain in addition to headaches (Tr. at 27, 366). He exhibited tenderness of the lumbar spine and mild gait difficulty due to chronic lower extremity pain (Tr. at 27, 367). He was treated with Toradol, Tylenol, and Vistaril, and reported "significant symptom improvement" (Id.).

A November 2019 MRI of the lumbar spine showed degenerative changes and broad-based disc protrusion at L4-L5 (Tr. at 27, 362).

In December 2019, the Plaintiff underwent an EMG/nerve conduction study of the left lower extremity, which documented abnormal findings (Tr. at 27, 346-347).

The Plaintiff went to the emergency room in February 2020 with complaints of a headache lasting approximately one week, and that ibuprofen and Tylenol provided no relief (Tr. at 27, 356). The Plaintiff's neurological examination was normal; his motor strength was normal (5/5) in all extremities; a sensory exam was grossly intact; and he had a normal gait (Tr. at 27, 357). He was administered medication, which "significantly improved" his symptoms (Id.).

According to Dr. Paredes' April 2020 records, the Plaintiff continued to complain of back and left leg pain and a dull headache associated with photophobia and phonophobia for three to

four days (Tr. at 27, 459). Dr. Paredes advised the Plaintiff to continue with Gabapentin and recommended Excedrin Migraine for headaches (Id.).

In July 2020, the Plaintiff reported to psychologist Nicole M. Smith, M.A., that he goes to the store and runs errands weekly with his son or father (Tr. at 24-25, 381). He occasionally visits with friends or family (Id.). His hobby is playing the guitar (Tr. at 28, 381). He was able to perform all self-care duties independently and bathes daily (Tr. at 25, 28, 381). He does household chores including washing dishes (Tr. at 28, 381). He regularly goes outside, and he exercises by walking around the house (Id.).

During follow up with Dr. Paredes in July 2020, the Plaintiff complained of intermittent pain and left lower extremity numbness, but he had a normal gait and station (Tr. at 27, 432). He reported no complaints of headaches. (Id.) Dr. Paredes referred the Plaintiff to physical therapy (Tr. at 27, 433). The following month, Dr. Paredes again noted that the Plaintiff had a normal gait and station (Tr. at  27, 426). The Plaintiff continued with Gabapentin (Tr. at 27, 427). Imaging of the lumbar spine from mid-August 2020 showed multilevel degenerative changes (Tr. at 27, 515).

Physical therapy discharge records in August 2020 noted that the Plaintiff's "lumbar mobility and hamstring flexibility are within functional limits. He still demonstrates functional limitations (i.e., lifting, bending forward). Overall, he has made good improvement and progress since his initial visit" (Tr. at 27, 583).

In late August 2020, the Plaintiff attended a consultative examination with Laura Cunnings, FNP (Tr. at 27, 384-387). He reported having lower back pain, but he stated that he used heat and ice to alleviate the pain, and he denied radiation of pain to the bilateral legs (Tr. at 27, 384). He reported that his left leg had been going numb and "going out" on him, but not since doing physical

therapy (Id.). He also reported having migraines and noted that Excedrin migraine OTC sometimes helped (Tr. at 384). He reported "very occasional dizziness over the past 3-4 months," but he denied being hospitalized due to migraines or dizziness (Id.). Ms. Cunnings noted that the Plaintiff used a cane, and his gait was antalgic, though she observed him walking to his car following the exam and his gait appeared normal (Tr. at 27, 385).[4] The Plaintiff was able to get on and off the examination table without difficulty (Tr. at 27, 386). On examination, the Plaintiff's lumbar range of motion was limited, but he had normal muscle and grip strength bilaterally and no evidence of atrophy (Id.). The Plaintiff was able to heel walk, toe walk, perform tandem gait, and partially squat (Id.).

The Plaintiff went to the emergency room in mid-September 2020 with complaints of headache and back pain, for which he had reportedly taken only Tylenol (Tr. at 27, 390). On examination, he had normal motor function; his sensation was normal; his gait was steady without difficulty; and his deep tendon reflexes were normal (Tr. at 27, 391). A computed tomography ("CT") scan of the Plaintiff's head showed no acute findings (Tr. at 27, 398). The Plaintiff's symptoms improved with medication (Tr. at 27, 392).

At an October 2020 follow-up with Dr. Paredes, the Plaintiff reported burning, tingling, and numbness sensation in the left leg (Tr. at 27, 408). He was advised to continue with Gabapentin (Tr. at 27, 409).

The Plaintiff reported lower back pain and left leg pain at visits with Dr. Paredes in 2021 (Tr. at 27-28, 530, 539-540). He was continued on Gabapentin (Tr. at 531, 540). In August 2021,

---

[4] While not cited by the ALJ, at the reconsideration level of review, James B. Smith, M.D., noted "there is now a documented attempt to feign a significant issue w/gait and station as noted by CE provider which does bring up the issue of malingering." (Tr. at 100)

Dr. Paredes noted the Plaintiff's complaint of intermittent sharp pain in the lower back with "electric shock" sensation in mid-aspect of his left thigh and numbness (Tr. at 27, 669). He exhibited tenderness of the lumbar spine but no neurological defects (Tr. at 27-28, 669). Dr. Paredes noted a history of migraines but no new headache complaints (Tr. at 28, 669). Records from November 2021 are essentially the same with continued conservative treatment (Tr. at 28, 679).

<u>Prior Administrative Medical Findings:</u>

Uma Reddy, M.D., a State agency medical consultant, reviewed the record at the initial level of administrative review in December 2019 and completed a physical assessment form indicating that the Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; and frequently climb ramps and stairs and balance (Tr. at 29, 58-60, 66-68). Dr. Reddy further indicated that the Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (<u>Id</u>.).

State agency medical consultant James Smith, M.D., reviewed the record at the reconsideration level of administrative review in August 2020 (Tr. at 29, 82-84, 98-100). Dr. Smith completed a physical assessment indicating that the Plaintiff could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and frequently perform all postural activities (<u>Id</u>.). Dr. Smith further indicated that the Plaintiff should avoid concentrated exposure to extreme cold and wetness (Tr. at 29, 83, 99).

The Plaintiff's Self-Described Limitations:

In the November 2019 "Function Report" he completed in connection with his initial claim for benefits, the Plaintiff reported that his lower back and legs hurt, and his left leg goes numb. (Tr. at 263) He can only stand for about 10 minutes before needing to sit down. (Id.) His leg gives out if he stands "very long." (Tr. at 268) He can only walk a short distance before needing to stop and rest for 5-10 minutes. (Id.) He must sit down to put on his pants. (Tr. at 264) He is in constant pain and must lie on heating pads. (Tr. at 270) He also has "really bad" headaches at least once per week. (Tr. at 263) He also completed a "Personal Pain Questionnaire" in connection with his initial application, reporting headaches and left leg numbness as well as lower back and left leg pain. (Tr. at 258) He described his pain as aching, burning, stinging, cramping, and throbbing, reporting again his need to lie down on a heating pad for pain relief. (Tr. at 258-260) In the February 2020 Function Report completed at the reconsideration level, he reported continued lower back and left leg pain as well as left leg numbness. (Tr. at 287) His conditions affect standing and walking, and he can only walk very short distances before needing to rest. (Tr. at 292) He also reported ongoing "severe" headaches that sometimes last all day. (Tr. at 287-288) He completed a second Personal Pain Questionnaire, reporting continued headaches and pain in his left leg. (Tr. at 281) He described his pain as aching, stabbing, burning, stinging, cramping, and throbbing. (Tr. at 281-283) Being in a dark room helps his headache and lying down in a recliner with a heating pad helps his back "a little." (Tr. at 281)

**The Administrative Hearing:**

The Plaintiff's Testimony:

The Plaintiff testified that he had daily pain in his lower back and left leg (Tr. at 45). He

stated the pain is a "dull pain . . . kind of like a toothache" (Tr. at 46). He stated that his leg pain was "burning, stinging, like sharp pain," and that he got leg numbness (Id.). He also reported having two to three migraine headaches a week (Tr. at 26, 45). When he got a migraine, he would "tie . . . something really tight" around his head, cover his eyes, and sit in a dark room for four to five hours (Id.). Gabapentin helped with his symptoms, but he stated that it caused nausea, dizziness, and sleepiness (Tr. at 26, 46). He stated that he could stand or walk for "[n]o more than 10 minutes" at a time; he could sit for "[p]robably 10 to 15 minutes" at a time; he could lift seven-to-eight pounds; and he could not bend (Tr. at 26, 46-47). He testified that he spends five to six hours a day lying down or leaning back with his legs up (Tr. at 26, 47-48).

The Plaintiff testified that "on a good day," he hardly has problems, but he does not "have many good days" (Tr. at 26, 48). On bad days, his wife helps him with putting on his socks (Id.). He does not do his own grocery shopping (Tr. at 49).

The Vocational Expert's (VE) Testimony:

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the VE testified that the individual could not perform his past relevant work, but could perform other light exertional jobs, including cleaner, folder, and hand bander. (Tr. at 42-43) She testified that being off task more than 15% or consistently absent two days per month would preclude all work. (Tr. at 44-45)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC Assessment and Evaluation of Symptoms in Disability Claims:

As an initial matter, it is important to remember that the RFC determination is the most a claimant can do despite her restrictions or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the relevant evidence in the record. See SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a), 416.945(a). Obviously, this includes evidence related to a claimant's subjective complaints. Id. §§ 404.1529, 416.929. These Sections require an adjudicator to make a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the

consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

SSR 16-3p further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms.
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. §§ 404.1529(c)(3), 416.929(c)(3).

It must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

As observed by the Plaintiff, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their

symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In this case, the ALJ acknowledged the Plaintiff's testimony, noting that he "experiences constant low back and left leg pain, and migraine headaches two to three times a week" as well as other "measures" he takes to alleviate his subjective symptoms: for headaches, the Plaintiff ties something around his head and sits in a dark room and the Plaintiff takes Gabapentin, although it makes him dizzy, nauseated and drowsy; the Plaintiff's pain disrupts his sleep; his leg goes numb and also hurts, and he is unable to stand for more than ten minutes; the Plaintiff is unable to bend; the Plaintiff can only lift 7 to 8 pounds; the Plaintiff spends six hours out of the day taking it easy; on a good day, the Plaintiff can take care of his personal care, but he does not have many good days; and his wife helps him put on his socks. (Tr. at 26) The ALJ also noted the Plaintiff's statements from his Function Reports submitted in November 2019 and February 2020: he reported regular church attendance; going to the store; and running errands weekly with his son or father (Tr. at 24, 25, 28).

After properly performing the two-step process, the ALJ proceeded to review the evidence of record, discussed *supra*, and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 26) Ultimately, the ALJ determined that the Plaintiff's impairments did not preclude all work activity, noting in particular that:

> His care and treatment has been entirely conservative and his condition seems to be stable. Treatment records note minimal headache complaints and minimal mental health complaints (Exhibits 8F, 9F, and 12F). Furthermore, the claimant's reported activities are essentially normal and reveals he functions fairly[5] well. He goes to the store and runs errands weekly with his son or father. He exercises by walking around the house. He is [*sic*] plays the guitar. . . . The claimant reported that he regularly attends church or other social functions. He stated he perform [*sic*] all self-care duties independently. The claimant noted he performs household chores including dishes.  . . . Considering the claimant's subjective complaints and the objective evidence restricting the claimant to light exertion with the above restrictions adequately addresses the location, duration, frequency, and intensity of his alleged symptoms as well as precipitating aggravating factors. There is also no evidence, or adverse side effects from treatment or medication, that would prevent the claimant from performing competitive work on a regular and continuous basis.

(Tr. at 28)

In Hines v. Barnhart, the Fourth Circuit stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

---

[5] Contrary to the Plaintiff's contentions, as pointed out by the Commissioner (ECF No. 12 at 14, fn 4), the ALJ did NOT find that he functions "very well" (ECF No. 11 at 9); to that extent, the undersigned disagrees with the Plaintiff's characterization of the ALJ's description of his reported activities as "simply false." (Id.)

453 F.3d at 565 n.3 (citing <u>Craig v. Chater</u>, 76 F.3d 585, 595 (4th Cir. 1995)). Some highlights of the inconsistencies or conflicts between the Plaintiff's allegations of total disabling symptomology and the objective evidence of record include his statement regarding the side effects from Gabapentin, despite the absence of such documentation in Dr. Paredes's treatment notes – indeed, Dr. Paredes continued the Plaintiff on this medication throughout the relevant period (See, Tr. at 27, 409, 427, 459, 493, 531, 540, 669, 679). While the Plaintiff endorsed chronic pain and mobility deficits, physical therapy records showed that he "obtained good improvement" (Tr. at 27, 583). While the Plaintiff testified having migraine headaches two to three times a week, causing him to retreat to a dark room for four or five hours (Tr. at 26, 45), he admitted the Gabapentin helped with his headaches[6] (Tr. at 46), and during the relevant period, the ALJ also observed that the Plaintiff sometimes reported having headaches, and sometimes did not report any complaints of headaches. (Tr. at 26, 27)

Moreover, as noted *supra*, while the ALJ recognized that the Plaintiff had ongoing treatment for his impairments, that treatment remained conservative, given the overall stability of those impairments. See <u>Sharp v. Colvin</u>, 660 Fed.Appx. 251, 259 (4th Cir. 2016) (conservative treatment was reasonably cited to find the claimant capable of working); <u>Vance v. Colvin</u>, 2014 WL 838906, at *4 (W.D.N.C. Mar. 4, 2016) (affirming where the ALJ found that the plaintiff's self-reported pain was inconsistent with her decision to undergo conservative treatment).

---

[6] "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." See <u>Gross</u> <u>v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986); see also, 20 C.F.R. §§ 404.1529(c)(4)(iv)-(v), 416.929(c)(4)(iv)-(v).

In any event, the ALJ explicitly cited SSR 19-4p (Tr. at 23-24), which provides that an adjudicator must "consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record . . . "[c]onsistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC]." See SSR 19-4p, 2019 WL 4169635, at *8.

Given the conflicting evidence consisting of the Plaintiff's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether the Plaintiff is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Craig, 76 F.3d at 589. The ALJ provided an adequate review that included not only the Plaintiff's testimony, but also the objective medical evidence of record and other evidence of record. In short, the ALJ provided a fairly thorough and adequate review of the Plaintiff's subjective complaints, reconciled them with the medical and other evidence of record, and ultimately determined that his symptoms did not limit him to the extent alleged.[7] Indeed, while the ALJ did not specifically find that the Plaintiff's conservative treatment of his physical impairments were dispositive of her conclusions, the law does not require one to be pain-free of experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, it is clear that the ALJ did not select only those portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments, as she also considered the objective medical evidence that did support his claims, as well as his testimony and other evidence. Arakas, 983 F.3d at 98.

Accordingly, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law, resulting in an appropriate RFC assessment, therefore, the ALJ's conclusions on these issues are based upon substantial evidence.

---

[7] Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting Craig, 76 F.3d at 589)).

The undersigned further **FINDS** that the final decision denying the Plaintiff's applications for disability insurance benefits and supplemental security income is supported by the substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's request for remand (ECF No. 11), **GRANT** the Defendant's request to affirm (ECF No. 12), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933

(1986); <u>Wright v. Collins</u>, 766 F.2d 841 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

 The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

 ENTER: May 2, 2023.



Omar J. Aboulhosn
United States Magistrate Judge